

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

June 21, 1962

Col. W. B. Bates, Chairman
Board of Regents
University of Houston
Houston, Texas

Opinion No. WW-1358

Re: Whether the Board of Regents
of the University of Houston
may legally commence, prior
to September 1, 1963, to con-
struct a Student Activities
Building and related ques-
tions under the facts submit-
ted.

Dear Col. Bates:

You have requested an opinion from this office upon the
question of:

"Whether the Board of Regents of University
of Houston may legally commence, prior to Septem-
ber 1, 1963, and without cost to the State of
Texas, to construct a Student Activities Building
upon its campus through funds obtained by private
donations plus loan obtained from the United
States of America and in connection therewith fix
fees and charges against the students for the use
of the building and facilities and pledge the reve-
nues from such fees and charges for the payment of
the loan."

In connection with the question posed you further state
in your letter that:

"The University of Houston has long needed
the proposed student activities facilities upon
its campus. We now have reason to believe that
private donors are ready to contribute a total of
$2,000,000.00, which will cover equipment, park-
ing lot and approximately 1/3rd of the building
cost. We are also advised that the Federal Gov-
ernment, through the Housing and Home Finance
Agency, Community Facilities Administration, Col-
lege Housing Program is now prepared to entertain
an application for a loan of $2,375,000.00 to com-
plete the construction of the proposed facilities.
It is also our understanding that the University
may apply for the loan on the basis of pledging

the project revenues, and a full faith and credit
pledge is not required. . . . In view of the
great need, of the present probability of $2,000,-
000.00 in private funds as donations, and the
prospect of obtaining a favorable loan from the
Federal Government of the balance needed ($2,375,-
000.00), the Board of Regents feels it to be to
the best interest and welfare of the University
and of the people of this State, that this project
not be delayed until After September 1, 1963, but
on the contrary should be commenced as soon as pos-
sible."

Section 1 of Article 2615g, Vernon's Civil Statutes,
enacted by the 57th Legislature, Regular Session, 1961, provides
for the creation of the University of Houston to be conducted,
maintained and operated under a Board of Regents.  Section 2 of
Article 2615g provides for the appointment of a Board of Regents
for the University of Texas by the Governor of the State of Texas.
In this connection, it is our understanding that the Governor has
not yet, pursuant to Section 2 of Article 2615g, appointed a
Board of Regents for the University of Houston.

While Section 1 of Article 2615g establishes the Uni-
versity of Houston upon the effective date of Article 2615g (see
Section 15 of Article 2615g), the provisions of Section 8 of Ar-
ticle 2615g provide that:

"The University of Houston, acting by and
through its Board of Regents, has agreed to donate
to the Board of Regents of the University of Hous-
ton herein created all of the assets, real, personal,
tangible and intangible, held in its name, whether
of record or not, on the first day of September, 1963,
together with all of the indebtedness against it on
that date still outstanding to the extent set forth
in this Act, and from such date the University of
Houston created by this Act shall hold title to all
properties so conveyed and shall commence operations
of such properties for the use and benefit of the
State of Texas."  (Emphasis added)

The provisions of Section 8a (1) and Section 8a (2) of
Article 2615g set forth certain indebtedness of the University
of Houston existing prior to the enactment of Article 2615g as
well as the manner in which such indebtednesses are to be retired
and the extent to which such indebtednesses are to be assumed by
the University of Houston created by Article 2615g.

Section 8a (3) of Article 2615g further provides that:

"The present University of Houston, on the effective date of this Act, will owe current obligations and accounts, but anticipates and pledges sufficient cash will be transferred to the University of Houston created by this Act to liquidate all of such current accounts. Such indebtedness and liabilities shall not be assumed by the University of Houston created by this Act save and except to the extent of the unencumbered cash transferred to it at that time. <u>No other debts or liabilities of the present University of Houston (save and except those stated in this Section 8a, and only to the extent provided in this Section 8a) shall be in any manner or to any extent assumed by or become debts or liabilities of the University of Houston created by this Act</u>." (Emphasis added)

While the present Board of Regents of the University of Houston would apparently be authorized to enter into an arrangement, such as the one presently proposed, pursuant to the provisions of Section 6 of Article 2815k, Vernon's Civil Statutes, and while Section 11 of Article 2615g would seem to indicate that the erection of a Student Activities Building by the Board of Regents of the University of Houston created by Article 2615g, under an arrangement such as is being considered by the present Board of Regents of the University of Houston, would be authorized at a date subsequent to August 31, 1963, we are of the opinion that by virtue of the provisions of Section 8a (3) of Article 2615g, quoted heretofore, the University of Houston created pursuant to Article 2615g could not assume any indebtednesses or liabilities, in any manner or to any extent, incurred by the erection of a Student Activities Building commenced prior to September 1, 1963.

The Legislature in enacting Article 2615g specifically set forth in Section 8a thereof the existing indebtednesses and liabilities that would be assumed by the University of Houston created by Article 2615g and the extent to which such liabilities and indebtednesses were to be assumed. The assumption of any further forms of indebtednesses is expressly prohibited by the provisions of Section 8a(3) of Article 2615g, which provide in part that:

". . . No other debts or liabilities of the present University of Houston (save and except those stated in this Section 8a, and only to the extent provided in this Section 8a) shall be in

any manner or to any extent assumed by or become debts or liabilities of the University of Houston created by this Act."

While under the proposed arrangement the lending agency could look only to revenue derived from fees and charges assessed against the students for the use of the Student Activities Building and its facilities for repayment of the loan, we are of the opinion this would constitute an indebtedness against this asset being donated to the University of Houston not provided for in Section 8a of Article 2615g, as any revenue accruing to the University of Houston in the future operation of the proposed building and its facilities would be encumbered until all indebtedness incurred in the erection of the facility was retired.

While it has been suggested in connection with the proposed arrangement that the Legislature did not intend that the restrictive language used in Section 8a of Article 2615g would apply to a loan secured wholly by a pledge of the net revenues to be derived from the operation of the Student Activities Building, we can not agree with this position for the reason that Section 8 of Article 2615g provides for the transfer of property from the present University of Houston to the University of Houston created by Article 2615g ". . . together with all of the indebtedness against it on that date [September 1, 1963] still outstanding to the extent set forth in this Act. . . ."  (Emphasis added)

Section 8a of Article 2615g sets forth the "extent" and includes therein the remaining unpaid portion ($825,000) of a University of Houston dormitory bond issue secured by revenues from the operation of designated University of Houston projects. Consequently, it is evident that the Legislature, in Article 2615g, considered obligations secured wholly by revenues to be an indebtedness of the University of Houston.

## SUMMARY

The Board of Regents of the University of Houston, created by Article 2615g, could not assume any indebtednesses or liabilities incurred by the erection of a Student Activities Building commenced prior to September 1, 1963, and the pledging of revenue derived from fees and charges assessed against students for the use of such a Student Activities Building for repayment of indebtednesses connected with the erection of such

Col. W. B. Bates, page 5  (WW-1358)

                building would constitute an indebtedness or
                liability as contemplated by Section 8a of Ar-
                ticle 2615g.

                                    Very truly yours,

                                    WILL WILSON
                                    Attorney General of Texas

                               By   Pat Bailey
                                    Assistant

PB:wb

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Morgan Nesbitt
Grundy Williams
Bob Shannon
Frank Booth

REVIEWED FOR THE ATTORNEY GENERAL

BY:  Leonard Passmore